UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENJAMIN G., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> ACTING COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No. 19 CV 04558 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Benjamin G. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying his application for benefits. For the following reasons, the Court grants Plaintiff's motion for summary judgment [11],[2] denies the Commissioner's motion for summary judgment [22], reverses the SSA's decision, and remands this case for further proceedings.

**Procedural Background**

Plaintiff applied for disability insurance benefits on June 8, 2016, alleging a disability onset date of April 2, 2016. [9-1] 48-49. The claim was denied initially and on reconsideration. [*Id.*] 57, 70. Plaintiff requested a hearing, which was held by an

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. However, citations to the administrative record [9] refer to the page number in the bottom right corner of each page.

ALJ on May 3, 2018. [*Id.*] 12-47. In a decision dated July 23, 2018, the ALJ found that Plaintiff was not disabled. [*Id.*] 75-86. The Appeals Council denied review on May 1, 2019 [*id.*] 5-8, making the ALJ's decision the final agency decision. This Court has jurisdiction to review the SSA's decision under 42 U.S.C. § 405(g).[3]

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant can perform his past relevant work; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

---

[3] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. [7].

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted); *see also Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) ("When an ALJ recommends that the agency deny benefits, it must first 'build an accurate and logical bridge from the evidence to the conclusion.'") (internal citation omitted).

## Discussion

Plaintiff, who was 51 years old on his alleged onset date, *see* [9-1] 49, worked in construction and suffered significant injuries in April 2016 when he was blown off the roof of a home by a wind gust. [12] 1; [9-1] 80. Plaintiff sought disability benefits based on his fractured hip, broken ribs, punctured lung, collapsed lung, splenectomy, and fractured pelvis. [9-1] 49-50, 80.

At step one of his written decision rejecting plaintiff's claim, the ALJ found that Plaintiff had not engaged in substantial gainful activity after his alleged onset date. [*Id.*] 77. At step two, the ALJ found that plaintiff had ten severe impairments: fractured hip, broken ribs, punctured lung, collapsed lung, status post splenectomy,

3

chronic pain status post traumatic fall, bilateral carpal tunnel syndrome, chronic obstructive pulmonary disease (COPD), depression, and anxiety. [*Id.*]. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any listed impairment. [*Id.*] 77-79. Regarding the paragraph B criteria for Listing 12.04, which governs depressive, bipolar, and related disorders, and Listing 12.06, which governs anxiety and obsessive-compulsive disorders, the ALJ found that Plaintiff had "moderate limitations" in three functional areas, including "concentrating, persisting, or maintaining pace," "understanding, remembering, or applying information," and "adapting or managing oneself." [*Id.*] 78-79. The ALJ then explained that:

> [t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

[*Id.*] 79.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the requirements of light work, as defined in 20 C.F.R. § 416.967(b), with certain additional limitations. [*Id.*] 79-80. Notably, the ALJ found that Plaintiff can "perform simple repetitive tasks, but no fast-paced tasks, and he can adapt to routine changes in the work environment." [*Id.*] 80. The ALJ concluded his RFC analysis by stating that Plaintiff's "mental limitations are supported by the findings on examination and the claimant's statements about his

4

symptoms." [*Id.*] 84.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. [*Id.*] 84-85. Finally, at step five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform: cashier, small parts assembler, or sorter. [*Id.*] 85-86. Accordingly, the ALJ found that Plaintiff was not disabled. [*Id.*] 86.

Plaintiff argues that the SSA's decision should be reversed and remanded because (1) the ALJ improperly adopted the opinion of a non-examining medical expert who opined that Plaintiff could perform light work, while discounting the opinion of a treating physician who found that Plaintiff was severely limited in his ability to work; (2) the ALJ's RFC determination that Plaintiff be limited to unskilled work did not adequately account for his non-exertional limitations, including his moderate limitation in concentration, persistence, or maintaining pace; and (3) the ALJ's RFC determination failed to consider all of Plaintiff's limitations arising from all his impairments in combination. [12] 9-15. After careful review of the parties' briefing, the ALJ's opinion, and the administrative record, the Court agrees with Plaintiff that the ALJ's RFC determination failed to accommodate his non-exertional limitations, specifically his moderate limitations in concentration, persistence, or pace. Consequently, the Court concludes that the Commissioner's decision must be reversed.[4]

---

[4] Given the Court's ruling on this issue, the Court need not address Plaintiff's other arguments for reversing the SSA's decision.

**A. The RFC Did Not Account for Plaintiff's Moderate Limitations in Concentration, Persistence, or Pace.**

Plaintiff argues that the ALJ committed a reversable error in his RFC assessment, because the ALJ's finding that Plaintiff could perform "simple repetitive tasks, but no fast-paced tasks, and he can adapt to routine changes in the work environment" does not adequately take into consideration Plaintiff's non-exertional functional limitations. [12] 12. Among the issues he raises, Plaintiff notes that an ALJ must incorporate his findings and conclusions from his paragraph B mental functional analysis—including any moderate limitations in concentration, persistence, or pace—into the ALJ's RFC assessment, and suggests that the ALJ failed to do that here. [*Id.*] 13.[5] The Court agrees.

An ALJ's RFC finding "must incorporate the 'totality of a claimant's limitations,' including any 'deficiencies of concentration, persistence and pace.'" *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). Further, "[w]ell-established case law in the Seventh Circuit holds that 'catch-all terms' -- like 'simple, repetitive tasks'

---

[5] The Court notes that Plaintiff's arguments on this particular issue are somewhat vague and underdeveloped. Plaintiff states the general rule that an ALJ must "incorporate all of the Plaintiff's limitations supported by the medical record [including] any deficiencies the Plaintiff may have in concentration, persistence, or pace," and broadly asserts that the ALJ did not include a "detailed assessment" of the paragraph B criteria in his RFC assessment here. [12] 12-13. But Plaintiff does not develop the specific issue of his moderate limitation in concentration, persistence or maintaining pace much further, instead moving on to generally argue that substantial evidence in the record supports a finding that Plaintiff's non-exertional limitations arising from his mental impairments and chronic pain would generally prevent him from meeting the requirements of full-time unskilled work. [*Id.*] 14. The Court need not dwell on this issue or address all of Plaintiff's points because, while his argument is somewhat cursory, Plaintiff has identified a reversable error in the ALJ's failure to incorporate his limitations in concentration, persistence and pace into his RFC determination.

or 'no fast paced production' -- are insufficient to account for moderate limitations in [concentration, persistence and pace]." *Spychalski v. Saul*, 20-CV-399-WMC, 2021 WL 1040511, at *5 (W.D. Wis. Mar. 18, 2021) (citing *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("When it comes to the RFC finding, we have . . . underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace."); *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) ("[W]e have repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("[T]here is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace.")).

Here, in his discussion at Step 3 of the paragraph B criteria and whether Plaintiff's mental impairments met or equaled any listed impairment, the ALJ found that Plaintiff had moderate limitations in his ability to concentrate, persist, or maintain pace. [9-1] 79. The ALJ's discussion in support of this finding is notably brief. The ALJ observed that Plaintiff had "stated that he had problems concentrating and difficulty finishing what he started," and that he had reported issues with concentration at a psychiatric consultative examination in August 2016 with Dr. Kenneth Heinrichs, Psy.D. [*Id.*] 79, 83. The ALJ stated that the "results of the mental

7

status examination showed that [Plaintiff's] attention and concentration were intact," but nonetheless, the ALJ concluded that "[g]iven the [Plaintiff's] statements of pain, in addition to depression, it is found that he has a moderate, but not marked, limitation in this functional area." [*Id.*] 79.

At the end of his paragraph B analysis of Plaintiff's mental impairments, the ALJ included boilerplate language that his RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." [*Id.*]. However, the ALJ failed to incorporate Plaintiff's moderate limitation in maintaining concentration, persistence, and pace into his RFC, nor did he offer any explanation for omitting these limitations. In fact, the ALJ's opinion offers almost no explanation whatsoever for the basis of the mental limitations he included in the RFC, other than the conclusory statement that the "mental limitations are supported by the findings on examination and the claimant's statements about his symptoms." [*Id.*] 84. As to what those mental limitations were, the ALJ found Plaintiff could perform "simple repetitive tasks, but no fast-paced tasks," with an additional finding that Plaintiff could "adapt to routine changes in the work environment." [*Id.*] 80. But, as noted above, this was an error, because the use of "catch-all" terms like "simple, repetitive tasks" or "no fast paced tasks" is generally not sufficient to account for a moderate limitation in concentration, persistence, or pace. *See Spychalski*, 2021 WL 1040511, at *5 (citations omitted); *see also O'Connor-Spinner*, 627 F.3d at 620 ("[t]he ability to stick with a given task over a sustained period of time is not the same as the ability to learn how to do tasks of a given complexity."); *Dula A. v. Saul,* 18 CV

8

4253, 2019 WL 3386998, at *6 (N.D. Ill. July 26, 2019) ("[r]estricting a person to simple routine tasks, as the ALJ has done here, is unrelated to the question of whether an individual with . . . difficulties with concentration, persistence, and pace can perform such work.") (citing *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015)); *see also Michael E. v. Saul*, 18 C 5307, 2019 WL 3002971, at *4 (N.D. Ill. July 9, 2019) ("Nor does eliminating 'fast paced production requirements' account for Claimant's limitations in pace, especially where, as here, the ALJ leaves that term undefined.") (citations omitted).

In short, Seventh Circuit precedent is clear that once the ALJ found that Plaintiff was moderately limited in concentrating, persisting, or maintain pace, he was required to *specifically* account for those limitations in his RFC determination. By merely limiting Plaintiff to "simple, repetitive work" and "no fast-paced tasks," the ALJ failed to satisfy this requirement and properly account for Plaintiff's moderate limitations in in concentrating, persisting, or maintaining pace. The ALJ's RFC determination is therefore not supported by substantial evidence, and the decision must be reversed. *See, e.g., Crump,* 932 F.3d at 571 (reversing decision where ALJ limited Plaintiff to "simple, routine, repetitive tasks" because "there is no basis to conclude that [those terms] account for problems of concentration, persistence or pace .")

Additionally, although Plaintiff does not specifically raise the issue in his brief, the Court notes that the ALJ's failure to account for Plaintiff's moderate limitation in concentration, persistence, and pace in his RFC also tainted the corresponding

9

hypothetical to the vocational expert ("VE").[6] *See Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) (accepting argument that ALJ's failure to incorporate moderate limitations in concentration, persistence, or pace in RFC can "taint[ ]" hypothetical question posed to VE and VE's opinion as to number of jobs existing in national economy that plaintiff can perform). At the hearing, the ALJ consulted a VE to determine whether jobs existed in the national economy that Plaintiff was capable of performing. [9-1] 40-43. The ALJ asked the VE to assume a claimant with the same age, education, and work experience as Plaintiff, and the same physical and postural RFC limitations. [*Id.*] 40-42. The ALJ then also added in the limitation that Plaintiff could do "simple, repetitive tasks, no fast-paced tasks, [and] can adapt to routine changes in the work environment." [*Id.*] 42-43. The ALJ then asked the VE if there were jobs at the "light level" Plaintiff could perform, to which the VE responded there were three: cashier, small parts assembler, and a sorter. [*Id.*] 43.

The ALJ relied on this testimony from the VE that there were jobs available for an individual who could perform "simple, repetitive tasks, but no fast-paced tasks" as part of his finding that Plaintiff was not disabled. [*Id.*] 85-86. This was an additional error that must be corrected on remand. Just as a limitation to simple,

---

[6] This Court generally need only consider the arguments that Plaintiff has specifically raised in his opening brief. *See, e.g., Perez v. Barnhart*, 02 C 6876, 2003 WL 22287386, at *8 (N.D. Ill. Sept. 30, 2003) (noting that arguments not raised in an opening brief are waived and need not be addressed). Although Plaintiff mentions the VE testimony in passing, he does not raise any argument with respect to the ALJ's hypotheticals, which could be grounds to find any arguments waived. But the issues of the ALJ's RFC and his corresponding hypothetical to the VE are closely related, and because the Court has found remand is warranted here, it believes it appropriate to comment on the issues with respect to the ALJ's hypotheticals to the VE, to ensure these errors are also corrected on remand.

repetitive tasks and no fast-paced tasks is generally insufficient to account for moderate limitations in concentrating, persisting, or maintaining pace in an RFC—so too are those catch-all terms generally insufficient for hypotheticals to VE's. *See generally Winsted v. Berryhill,* 923 F.3d 472, 478-79 (7thCir. 2019) ("Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations."); *O'Connor-Spinner*, 627 F.3d at 620 ("In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace.").

Interestingly, the ALJ did also ask the VE if the Plaintiff would be able to work if he was "unable to maintain concentration and attention over 15 percent of the time." [*Id*] 43. The VE responded that Plaintiff would not be able to perform any work with those additional limitations. [*Id.*]. The ALJ's opinion contains no discussion of this VE testimony, nor is there any explanation as to why the ALJ ultimately did not include a 15-percent off-task time limitation in Plaintiff's RFC, despite including it in a subsequent hypothetical to the VE. That the ALJ relied on the VE's testimony responding to his first hypothetical using inadequate catch-all terms like "simple repetitive work," but ignored the VE's testimony in response to a second hypothetical that actually attempted to account for Plaintiff's mental limitations, further emphasizes the ALJ's complete failure to account for Plaintiff's moderate limitations in concentration, persistence, or pace in his RFC. *See, e.g., Winsted*, 923 F.3d at 477

11

("Because the ALJ did not include [plaintiff's] difficulties with concentration, persistence, and pace in the hypothetical he *did* consider, the decision cannot stand.") (emphasis in original).

**B. The Commissioner's arguments in response are without merit.**

The Commissioner argues in response that the ALJ's mental RFC was supported by substantial evidence and that the ALJ built the requisite "logical bridge" from the evidence to his RFC assessment. [23] 7-9. The Commissioner notes that two state agency psychologists who reviewed Plaintiff's claim found that he had no severe mental limitations. [*Id.*] 8 (citing [9-1] 53, 65-66). Further, the Commissioner points out that Dr. Heinrichs, who conducted a mental examination, concluded that Plaintiff's "understanding, persistence, sustained concentration, and social interactions were all normal." [*Id.*] (citing [9-1] 685); *see also* [9-1] 83 (ALJ noting that Dr. Heinrichs "opined that the claimant had normal understanding, persistence, and sustained concentration. . ."). The Commissioner goes on to state that the ALJ "extended plaintiff the benefit of the doubt, found his mental impairments to be severe, and restricted him to simple and repetitive tasks," and that this RFC was "supported by substantial evidence in the record." [23] 8.[7]

---

[7] The Commissioner additionally asserts in passing that Plaintiff's argument that "a limitation to unskilled work does not adequately accommodate plaintiff's non-exertional limitations" is an "immediate nonstarter," because "the ALJ did not restrict plaintiff to only unskilled work, but rather to simple and repetitive tasks, and the ability to adapt to routine changes in the work environment." [*Id.*]. But the Commissioner is attempting to make a distinction where none exists. The phrase "simple, repetitive tasks" is interchangeable with the term "unskilled work." *See, e.g., Varga,* 794 F.3d at 814 (noting that the terms "simple, routine, and repetitive tasks . . .refer to 'unskilled work'"). Insofar as the Commissioner is pointing in particular to the additional limitation to no "fast paced" tasks, that distinction is unavailing considering that an ALJ's use of that generic and undefined term has similarly been rejected by the Seventh Circuit. *See id.* at 815; *DeCamp,* 916 F.3d at 676.

The Seventh Circuit has recognized certain narrow exceptions to the general rule that an RFC limitation to "simple repetitive tasks" and "no fast-paced tasks" does not adequately account for a moderate limitation in concentration, persistence, or pace. *See generally Spychalski*, 2021 WL 1040511, at *5 (noting that an ALJ's use of catch-all terms like "simple, repetitive tasks" or "no fast paced production" fails "*unless* the ALJ otherwise specifically accounted for CPP limitations in formulating her RFC in one of two ways"). First, the Seventh Circuit has held that "an ALJ may reasonably rely upon the opinion of a medical expert who translates [concentration, persistence, or pace] findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *see also Rankila v. Saul*, No. 18-CV-406-WMC, 2019 WL 4942110, at *3 (W.D. Wis. Oct. 8, 2019) (providing an overview of Seventh Circuit cases describing this exception). Second, courts may affirm such RFC determinations "when they adequately account for the claimant's demonstrated psychological symptoms." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *see also O'Connor-Spinner*, 627 F.3d at 619 ("We also have let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform.").

However, neither of these limited exceptions is applicable here. First, the ALJ did not rely on the opinion of a medical expert who "translated" his or her findings regarding concentration, persistence, or pace into an RFC. Insofar as the Commissioner points to the opinions of the state psychological consultants and Dr.

13

Heinrichs as supporting the ALJ's conclusion, the ALJ afforded those opinions "little weight." [9-1] 83-84. Specifically, as to Dr. Heinrichs, the ALJ noted that "subsequent evidence indicates a worsening of the claimant's psychological symptoms. He testified that his psychological issues have worsened and the record shows he had reported depression to his physician, who prescribed him medication." [*Id.*] 83. As to the state consultants, the ALJ stated that "[t]he State agency evaluators neither examined the claimant nor based their opinions on the most recent evidence of record. As with Dr. Heinrichs' opinion discussed above, these opinions are inconsistent with subsequent evidence showing a worsening of his psychological issues." [*Id.*] 84.

In other words, far from relying on the opinions of medical experts, the ALJ appears to have largely, if not entirely, discounted those opinions and made his own finding that that Plaintiff's psychological symptoms had worsened such that Plaintiff had moderate limitations in concentration, persistence, and pace. Regardless of how the ALJ reached that finding, once he made it, he was required to specifically account for those moderate limitations in the RFC. But, as already discussed above, he failed to do so. The Commissioner's attempt to justify the ALJ's finding by way of reference to opinions to which the ALJ himself afforded only "little weight" amounts to improper *post-hoc* rationalization, which the Court may disregard. *See, e.g., Eddins v. Colvin,* 15 C 8372, 2016 WL 6803102, at *7 (N.D. Ill. Nov. 16, 2016) ("the Commissioner cannot now rely on a rationale that the ALJ did not rely upon in his opinion") (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016)); *Kinley v. Astrue,* 1:12-CV-740-JMS-DKL, 2013 WL 494122, at *5 (S.D. Ind. Feb. 8, 2013) (rejecting the

14

Commissioner's argument that medical expert testimony supported the ALJ's conclusion, where "the ALJ did not reference [the expert's] testimony as support for [the ALJ's] conclusion," noting that "[t]he Court cannot rely on the Commissioner's *post-hoc* rationale for the ALJ's decision).

Second, the Court is not persuaded that the ALJ's RFC "adequately account[s] for the claimant's demonstrated psychological symptoms." *See Jozefyk*, 923 F.3d at 498. The Commissioner generally asserts that the RFC is supported by substantial evidence and the record, and argues that the ALJ "generously accommodated plaintiff's alleged mental symptoms, despite three doctors' belief that these impairments were not severe, largely on account of plaintiff's own statements." [23] 8. But the Commissioner fails to explain *how* a limitation to "simple, repetitive tasks" and "no fast-paced tasks" adequately accounts for Plaintiff's mental limitations. And even if they had, this would simply amount to further *post-hoc* rationalization, because the ALJ himself failed to offer any detailed explanation as to the basis of this RFC finding. Rather, after finding that Plaintiff was moderately limited in concentration, persistence, or maintaining pace, the ALJ limited Plaintiff to "simple repetitive tasks" and "no fast-paced tasks," but then did not address that limitation or the basis for it in any further detail. *See* [9-1] 79-80, 80-85. The ALJ simply stated in conclusory fashion that the "mental limitations are supported by the findings on examination and the claimant's statements about his symptoms." [*Id.*] 84 (citing [9-1] 182-190, 684-685. But this is not a sufficient explanation to demonstrate to the Court that the RFC finding "adequately accounts" for Plaintiff's mental limitations.

15

Indeed, the particular examination the ALJ points to here for support is that of Dr. Heinrichs, who again, the ALJ afforded little weight. [*Id*] 83. It makes little logical sense for the ALJ to largely disregard Dr. Heinrichs' opinion in light of Plaintiff's "worsening psychological symptoms," but then attempt to cite to that opinion as supporting the RFC determination without any further explanation. As to the Plaintiff's statements that the ALJ purports to rely on, the ALJ cites generally to the Plaintiff's hearing testimony and the "Function Report" form Plaintiff completed as part of his disability application, which includes Plaintiff's representations about how his mental and physical impairments limit his ability to function. [*Id.*] 17-30, 182-190. But the ALJ does not identify what specific testimony or statements he is relying on, and offers no explanation about how those particular statements support a limitation to "simple repetitive work."

It is of course possible this is one of those limited exceptions where an RFC limitation to "simple, repetitive tasks" does in fact adequately accommodate a plaintiff's moderate limitations in concentration, persistence, or pace. This seems unlikely, given how critical the Seventh Circuit has been of the use of those generic, catch-all terms. But even if this were such a situation, the ALJ's opinion is so devoid of explanation and reasoning as to the basis of this RFC finding that it is impossible for the Court to trace the "logical bridge" from the evidence the ALJ purports to rely on to his conclusion. The decision therefore cannot stand. *See Berger*, 516 F.3d at 544.

In sum, binding and well-established Seventh Circuit precedent required the ALJ to adequately account for Plaintiff's moderate limitations in concentration,

16

persistence, or pace in both his RFC determination and in the hypothetical to the VE. This he failed to do, and none of the limited exceptions to this general rule are applicable. The ALJ's decision is therefore not supported by substantial evidence and must be reversed. On remand, the ALJ must conduct a fulsome analysis of Plaintiff's limitations arising from his mental impairments, and must specifically account for those limitations—including his moderate limitations in concentration, persistence, or pace[8]— in his RFC determination and hypothetical to the VE.

---

[8] Plaintiff notes in passing that the ALJ also found he has moderate limitations in "adapting or managing oneself" and "understanding, remembering, or applying information," and suggests that the ALJ similarly failed to account for these limitations in his RFC. [12] 12. As with the moderate limitation in "concentration, persistence, or pace," the ALJ's opinion lacks any detailed explanation as to how the RFC determination specifically accounts for Plaintiff's limitations in these additional functional areas. [Id.] 78-80. All that exists is the ALJ's same general statement that the RFC is supported by the mental examination, to which the ALJ afforded little weight, and by unspecified statements from the Plaintiff. It may be possible that limitations to "unskilled work," and "routine changes" in the work environment do accommodate moderate limitations in "adapting or managing oneself" and "understanding, remembering, or applying information." *See, e.g., Gina V. v. Kijakazi,* 20 C 4009, 2022 WL 1457801, at *7 (N.D. Ill. May 9, 2022). The Court takes no position either way, but on remand the ALJ must be sure to clearly explain *how* his renewed RFC formulation specifically accounts for these moderate limitations as well.

## Conclusion

Plaintiff's motion for summary judgment [11] is granted, and the Commissioner's motion for summary judgment [22] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

								 *Heather K. McShain*
								 _____
								 **HEATHER K. McSHAIN**
								 **United States Magistrate Judge**

**DATE: June 21, 2022**